IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-811

 Filed: 17 September 2019

Buncombe County, No. 05 CVD 1276

KELLI DILLINGHAM, Plaintiff,

 v.

SCOTT RAMSEY, Defendant.

 Appeal by plaintiff from order entered 26 January 2018 by Judge Andrea F.

Dray in District Court, Buncombe County. Heard in the Court of Appeals 13

February 2019.

 Sharpe & Bowman, PLLC, by Brian W. Sharpe, for plaintiff-appellant.

 Siemens Family Law Group, by Brenda Coppede, for defendant-appellee.

 STROUD, Judge.

 Mother appeals the trial court’s order based upon its calculation of past due

child support and allowing Father to pay arrears at the rate of $100.00 per month.

Mother invited any error in the calculation of the child support arrears. Where

Father was obligated under a 2009 order to pay child support and failed to pay Mother

$24,400.00, the trial court abused its discretion by ordering Father to pay the arrears

at the rate of $100.00 per month—or over a period of 20 years and 4 months—when,

based on Father’s high income, he had the ability to pay the entire amount.

 I. Background
 DILLINGHAM V. RAMSEY

 Opinion of the Court

 Mother and Father married in 1996 and divorced in 2006. Together they have

four children. Father was required to pay $4,877.00 per month in child support under

a 30 October 2009 order. At the time of the 2009 order, his monthly gross income was

$28,401.00, and his monthly expenses were $16,282.00. Mother’s monthly gross

income was $3,927.00, her monthly expenses were $5,313.00, and her expenses for

the children were $3,491.00. Because of the parties’ high combined income, the trial

court set child support based upon the parties’ incomes and the needs of the parties

and children. The October 2009 order decreed that “[Father] shall pay child support

to Plaintiff in the sum of $4,877.00 per month, retroactive to February 1, 2009.” The

order did not address any reduction in child support upon a child turning 18; in fact,

the order failed to address cessation of child support at all.

 In September 2015, after the parties’ oldest child started attending college,

Father unilaterally reduced his child support payment by 25 percent. Father reduced

his monthly child support payment by an additional 25 percent once their second

oldest child began attending college. Father did not file any request for modification

with the court before reducing the payments.

 On 3 November 2016, Mother filed a motion for contempt and show cause

requesting Father be found in contempt of court for failure to pay child support as

required by the 2009 order, requesting the past due child support and attorney’s fees.

On 24 January 2017, Father filed a motion to modify child support and custody,

 -2-
 DILLINGHAM V. RAMSEY

 Opinion of the Court

seeking modification of custody and a reduction of child support. On 23 February

2017, Mother filed a response to Father’s motion and requested modification of child

support due to father’s increase in income and the needs of the children. The parties

agreed on the issues of child custody and child support modification and entered a

consent order before the hearing on the contempt motion. On 5 December 2017, a

hearing was held on Mother’s motion for contempt for failure to pay child support.

The trial court entered an order on 26 January 2018 finding Father failed to pay as

required by the 2009 order, but was not in willful contempt, and required him to pay

$24,400.00 in child support arrears in $100.00 monthly installments.1 Mother timely

appealed and Father cross-appealed.2

 II. Calculation of Arrearage

 Mother argues that the trial court “miscalculated the child support arrearage

as $24,400 when it should have been $26,840.” But, at trial, Mother’s counsel only

requested $24,400.00 in his closing statement:

 Based on the testimony I heard that would be a total
 reduction in aggregate of $24,400 from the time period
 beginning in September 2015 when the first reduced
 payment was made through December 2016, the month
 immediately preceding defendant’s filing of his motion to

1 The order also provided “[t]hat nothing herein will prohibit [Father] from paying the total amount
due, or higher amounts at any time, until the arrears are paid in full.” Since neither party has raised
an issue of mootness with this Court, we presume Father has thus far not elected to pay off the arrears
in full.

2 Father subsequently withdrew his cross-appeal pursuant to North Carolina Rule of Appellate
Procedure 37(e)(1).

 -3-
 DILLINGHAM V. RAMSEY

 Opinion of the Court

 modify the support amount.

 Mother asked the trial court for $24,400.00, and the trial court ordered Father

to pay that amount in child support arrears. To the extent that it was an error not

to include child support payments for January 2017 in the trial court’s calculations,

it is invited error, and Mother “may not base an appeal on an alleged error that she

invited.” See Quevedo-Woolf v. Overholser, ___ N.C. App. ___, ___ 820 S.E.2d 817, 835

(2018). This argument is dismissed.

 III. Payment of Arrearage

 Mother argues that “[t]he trial court abused its discretion by enforcing the

arrearage in installments of only $100 per month[,]” as this will extend the payment

of the arrears over 20 years, until the children who were to benefit from the child

support are in their thirties, while Father earns over $1,700,000 per year and has the

ability to pay all of the arrears.

 No prior cases address a trial court’s determination of how child support

arrears should be paid in this context—where it appears the payor has the ability to

pay arrears immediately—but as in child support matters generally, the trial court

has broad discretion to order a remedy supported by the facts and circumstances in

the particular case:

 Computing the amount of child support is normally an
 exercise of sound judicial discretion, requiring the judge to
 review all of the evidence before him. Absent a clear abuse
 of discretion, a judge’s determination of what is a proper

 -4-
 DILLINGHAM V. RAMSEY

 Opinion of the Court

 amount of support will not be disturbed on appeal. In
 exercising sound judicial discretion, a trial judge is guided
 by the following general principles:
 By the exercise of his discretion, a judge ought
 not to arrogate unto himself arbitrary power
 to be used in such a manner so as to gratify
 his personal passions or partialities. A judge
 is subject to reversal for abuse of discretion
 only upon a showing by a litigant that the
 challenged actions are manifestly
 unsupported by reason.

Plott v. Plott, 313 N.C. 63, 69, 326 S.E.2d 863, 867-68 (1985) (citation, parentheticals,

and ellipsis omitted) (quoting Clark v. Clark, 301 N.C. 123, 128-29, 271 S.E.2d 58, 63

(1980)).

 Mother does not challenge any specific findings of fact as unsupported by the

evidence in her brief, but she argues that “[i]n the order on appeal, the trial court

offered no reasoning or findings of fact to support its ruling for periodic payments of

$100 per month towards a substantial arrearage.” Father argues that Mother

abandoned any issue of the amount of the monthly payments toward arrears by not

requesting a specific amount before the trial court.

 We first reject Father’s argument that Mother abandoned the issue of how the

arrears would be paid by not requesting a specific monthly payment. Here, there

would have been no reason for Mother to request any particular monthly payment.

Father has not raised any inability to promptly pay the entire arrears at trial or on

appeal.

 -5-
 DILLINGHAM V. RAMSEY

 Opinion of the Court

 As the order on appeal notes, the allegations of Mother’s “motion to Show

Cause are uncontroverted.” Father unilaterally reduced his child support payments

based on his belief that he had the right to do so, but he did not. As the trial court’s

order acknowledges, Father had no right to reduce his payments and he violated the

2009 order by reducing the payments. In addition, Mother had a clear legal right to

enforce the 2009 order. The trial court’s rationale for not finding Father in civil or

criminal contempt was based upon his voluntary payment of expenses for the adult

children. Mother does not challenge on appeal the trial court’s conclusion that Father

was not in willful contempt, so that portion of the order is final, and we express no

opinion on that portion of the ruling.

 The order includes findings of fact regarding Father’s payment for college

expenses for the parties’ children who had turned 18 and were attending college. The

trial court found as of the hearing, Father had paid “total additional funds and

payment of expenses” for the two older children of $120,861.30. In addition, he “has

paid thousands [of dollars] in school trips and sporting equipment, computers, and

vehicles, and in fact, anonymously purchased new equipment for [one child’s] entire

high school football team.” He also continued to provide health insurance for all four

children and paid 100 percent of unreimbursed or uncovered healthcare expenses for

all of the children, although the order required him to pay only 90 percent. Based

upon Father’s voluntary payment of these substantial additional expenses for the

 -6-
 DILLINGHAM V. RAMSEY

 Opinion of the Court

children, the trial court found that Father was not in willful contempt of the 2009

order, because he “fairly believed, albeit mistakenly, that the custody and Support

order permitted him to reduce the original support amount by one-fourth (1/4)

whenever each of the parties’ children in common reached the age of majority and

graduated from high school.”

 The trial court also found that Father had no legal right to unilaterally reduce

his child support, citing to Craig v. Craig, and determined that the order is

enforceable and that Father owed the arrears. 103 N.C. App. 615, 618, 406 S.E.2d

656, 658 (1991) (“[W]hen one of two or more minor children for whom support is

ordered reaches age eighteen, and when the support ordered to be paid is not

allocated as to each individual child, the supporting parent has no authority to

unilaterally modify the amount of the child support payment. The supporting parent

must apply to the trial court for modification.”). The trial court found that although

Father’s voluntary support of the college-age children was “commendable,” those

contributions “must be excluded from this Court’s determination of whether to award

[Mother] recovery of the child support underpayment and arrearage.” The trial court

also found that Father was not precluded from filing a motion to modify child support

by “any of the grounds set forth in NC Gen Stat §405-13.10(a)(2) [sic],” and he was

not affected by “any physical disability, mental incapacity, indigency,

misrepresentation of another party, nor any compelling reason that might have

 -7-
 DILLINGHAM V. RAMSEY

 Opinion of the Court

reasonably prevented him from filing a motion to modify the child support obligation

before his monthly payments came due.”3 Because of Father’s voluntary support of

the adult children, the trial court determined that “no sanctions or penalty should be

imposed” upon him, and Mother does not argue otherwise.

 Instead, despite Father’s apparent ability to pay the entire amount

immediately, the trial court ordered him to pay $100.00 per month. At this rate, it

will take 20 years and 4 months for him to pay the entire arrears. When he completes

payment in 2038, the youngest child will be age 35 and the second-oldest will be 38.

Most of the arrearages will be paid long after all four children have become adults.

 Mother argues that since the primary goal of child support is to ensure the

welfare of the minor children, there is no reasonable explanation for extending

payment of the arrearages owed over more than 20 years. Instead of having the

arrearages paid while the two youngest children are still minors living with Mother—

while they can still benefit directly from the child support—nearly all of the

arrearages will be paid long after all of the children have become adults. According

to Father’s own evidence, his income for 2017 was $144,196.00 per month, or

3 The trial court was clearly referring to North Carolina General Statute § 50-13.10(a): “Each past
due child support payment is vested when it accrues and may not thereafter be vacated, reduced, or
otherwise modified in any way for any reason, in this State or any other state, except that a child
support obligation may be modified as otherwise provided by law, and a vested past due payment is to
that extent subject to divestment, if, but only if, a written motion is filed, and due notice is given to all
parties either: (1) Before the payment is due or (2) If the moving party is precluded by physical
disability, mental incapacity, indigency, misrepresentation of another party, or other compelling
reason from filing a motion before the payment is due, then promptly after the moving party is no
longer so precluded.” N.C. Gen. Stat. § 50-13.10(a) (2017).

 -8-
 DILLINGHAM V. RAMSEY

 Opinion of the Court

approximately $4,800 per day. The entire arrears is five days of earnings for Father.

The $100.00 monthly payment is .069% of Father’s monthly gross income. In

contrast, Mother’s annual gross income is $46,054.44; the entire arrears is over half

of her annual gross income.

 It is well-established, as the trial court noted, that Father had no right to

unilaterally reduce his child support:

 As this Court has held, the “proper procedure for the father
 to follow was to apply to the trial court for relief. This he
 failed to do. He had no authority to unilaterally attempt his
 own modification.” Quoting Halcomb v. Halcomb, 352
 So.2d 1013, 1016 (La.1977), this Court explained:
 Support for this rule is found in a proper
 regard for the integrity of judgments. Such a
 regard does not condone a practice which
 would allow those cast in judgment to invoke
 self-help and unilaterally relieve themselves
 of the obligation to comply. Any other rule of
 law would greatly impair the sanctity of
 judgments and the orderly processes of law.
 To condone such a practice would deprive the
 party, in whose favor the judgment has been
 rendered, of an opportunity to present
 countervailing evidence, and at the same time
 deny the judge an opportunity to review the
 award in light of the alleged mitigating cause
 which had developed since its rendition. This
 policy applies equally in North Carolina.

Griffin v. Griffin, 96 N.C. App. 324, 327-28, 385 S.E.2d 526, 528-29 (1989) (citation

and ellipsis omitted).

 Of course, the trial court did not forgive Father’s arrears but instead allowed

 -9-
 DILLINGHAM V. RAMSEY

 Opinion of the Court

him to pay the arrears over a period of over 20 years with no interest. Although the

trial court made extensive findings regarding Father’s voluntary payments for the

adult children, it also stated these voluntary payments “must be excluded from this

Court’s determination of whether to award [Mother] recovery of the child support

underpayment and arrearage.” We agree that Father’s voluntary payments are not

a proper factor for consideration as to the trial court’s decision as to how the arrears

should be paid. The only other rationale we can find in the order for the

extraordinarily extended term for payment of the arrears is this finding:

 57. [Mother] waited one year and two months to file the
 Motion to Show Cause from the date that [Father] first
 reduced his monthly payments. That at the time of the
 filing of her motion, the two older children were no longer
 in her home and [Father] was providing exclusively for
 their financial support. That [Mother] had been complicit
 in the [sic] allowing [Father] to believe for over a year, that
 his reduction in child supports [sic] payments was not
 resisted by [Mother].

Although Mother does not challenge this finding as unsupported by the evidence, she

argues that the trial court erred in its interpretation of the law as applied to these

facts. By finding Mother “complicit” in “allowing [Father] to believe” that his

reduction of child support was “not resisted,” the trial court essentially found fault

with Mother for waiting to enforce the order.4 There is no basis in the law for

4 As noted above, the trial court specifically found that Father was not entitled to relief for his failure
to file a motion for modification under North Carolina General Statute § 50-13.10(a)(2) based upon
any “misrepresentation of another party.”

 - 10 -
 DILLINGHAM V. RAMSEY

 Opinion of the Court

punishing Mother for “waiting” for a year and two months to file a motion to force

Father to do what he was legally obligated to do. Even had Mother agreed for Father

to reduce his payments without an order from the court modifying the support, the

2009 order would still be enforceable.

 In Griffin, the husband was ordered in 1974 to pay the wife child support of

$200.00 per month. Id. at 325, 385 S.E.2d at 527. A few months after entry of the

order, the husband lost his job and then got new job paying less than his former job.

Id. He wrote a letter to the wife announcing that he would “send the kids $100 a

month because I do not think that it take [sic] two hundred dollars for my kids to live

on and I do not intend to pay your way living the way you are.” Id. He then paid

$80.00 per month until 1981, and $40.00 a month until the younger child reached 18

years of age. Id. Eight months after husband ceased his payments, in 1987, wife filed

a motion to reduce the arrears to judgment. Id. The trial court determined that the

wife had abandoned her rights to enforce the child support obligation by waiting

approximately 12 years from the husband’s unilateral reduction of support to file her

motion. Id. This Court reversed:

 Plaintiff’s argument, based on his ex-wife’s alleged
 silence and inaction in enforcing what he characterizes as
 her rights, is misguided. The touchstone in cases involving
 child custody and support is the welfare of the children, not
 freedom of contract. As our Supreme Court has observed,
 no agreement or contract between husband
 and wife will serve to deprive the courts of
 their inherent as well as their statutory

 - 11 -
 DILLINGHAM V. RAMSEY

 Opinion of the Court

 authority to protect the interests and provide
 for the welfare of infants. They may bind
 themselves by a separation agreement or by a
 consent judgment, but they cannot thus
 withdraw children of the marriage from the
 protective custody of the court.
 Just as our case law does not countenance agreements
 between parents that operate to the detriment of their
 children’s rights, so it does not allow one parent to evade
 the obligations of child support by citing the failure of the
 other parent to insist immediately on such support.

Id. at 328, 385 S.E.2d at 529 (citations omitted).

 Although the trial court has broad discretion in ordering the remedy for

Father’s failure to pay child support as ordered, this Court has never had the

opportunity to address any factor bearing upon the trial court’s decision to delay

payment of child support arrears other than the payor’s ability to pay. In every prior

case regarding payment of child support or arrears, the primary issue has been the

ability of the payor to pay the arrears. Since the “touchstone in cases involving child

custody and support is the welfare of the children,” normally courts require that child

support arrears be paid as soon as possible since prompt payment benefits the

children. Id. But ability to pay is not an issue in this case. Our prior cases have also

noted “the sanctity of judgments and the orderly processes of law.” Id. at 327, 385

S.E.2d at 528. Any ruling which could be interpreted as encouraging unilateral

reductions of child support without court approval endangers the sanctity of

judgments. See id. The trial court abused its discretion by fashioning a remedy for

 - 12 -
 DILLINGHAM V. RAMSEY

 Opinion of the Court

Father’s failure to pay child support as ordered without considering the purpose of

child support, the welfare of the minor children, and without considering Father’s

ability to pay.

 Here, with payment of child support so long delayed past the date it vested,

the trial court also had the discretion to award interest upon the unpaid child

support.5 Since the trial court failed to consider interest when child support is so long

delayed, it essentially granted Father an interest-free loan from Mother.

 Under North Carolina law, past due child support
 payments vest when they accrue. Allowing plaintiff to
 defer payment for years of his obligations ensuing from the
 date of the filing of the complaint, without paying interest
 on the award, would effectively grant him an interest-free
 loan from his ex-wife. When determining a child support
 award, a trial judge has a high level of discretion, not only
 in setting the amount of the award, but also in establishing
 an appropriate remedy. This discretion has been expanded
 in recent years due to the broad language of N.C. Gen. Stat.
 § 50-13.4. The North Carolina Supreme Court, moreover,
 upheld an award including interest when a defendant
 failed to meet his child support obligations under the
 parties’ separation and modification agreements. This
 Court also recognized the broad scope of remedies available
 to a trial judge in a child support case and upheld an award
 including interest “from the date defendant filed the
 motion to have the arrearages reduced to judgment.” We
 hold, accordingly, that interest may be awarded on child
 support accruing on the date the complaint is filed.

Taylor v. Taylor, 128 N.C. App. 180, 182, 493 S.E.2d 819, 820 (1997) (citations

5“Except as otherwise provided in G.S. 136-113, the legal rate of interest shall be eight percent (8%)
per annum for such time as interest may accrue, and no more.” N.C. Gen. Stat. § 24-1 (2017).

 - 13 -
 DILLINGHAM V. RAMSEY

 Opinion of the Court

omitted).

 Although the trial court here ordered Father to pay the arrears, as required by

North Carolina General Statute § 50-13.10, the only purpose we can find for the trial

court’s extension of payment over 20 years without even the benefit of interest at the

legal rate is to punish Mother for filing a motion to enforce the child support order

where Father was providing entirely voluntary support to their two adult children.

The trial court placed the burden upon Mother to file a motion to enforce the child

support obligation immediately upon Father’s unilateral reduction by finding she

waited over a year to move to show cause. But it was Father’s obligation to seek to

reduce his own child support before he reduced his payments, and Father was far

more financially able to pay to hire an attorney to file a motion to modify his support.

 In addition, it was not at all obvious when Mother filed her motion to show

cause that Father’s child support obligation would be subject to reduction based upon

either of the older two children turning 18. Father’s gross monthly income at the

time of the prior order in 2009 was $28,401.00 but had increased to $144,196.00 as of

the time of the motion to show cause, while Mother’s income was about the same as

in 2009. Living expenses and children’s needs tend to increase over time, and

Mother’s response to Father’s motion requested modification of child support for these

reasons. Further, Father’s child support obligation was not based upon the Child

Support Guidelines but on the needs of the children and ability of the parents to

 - 14 -
 DILLINGHAM V. RAMSEY

 Opinion of the Court

provide support. Mother had no obligation to move to enforce the order immediately

or to seek modification of Father’s child support just because he had unilaterally

reduced his payments or because he voluntarily paid for college and other expenses

for the adult children. Although his voluntary support for the parties’ adult children

is admirable, it does not change the law regarding his child support obligation under

the 2009 order.

 The trial court’s uncontested findings of fact and conclusions of law cannot

support its decree allowing Father to pay the $24,400.00 arrears at the rate of $100.00

per month. Under these unusual circumstances, the trial court abused its discretion

by ordering payment of the $24,400.00 arrears at the rate of $100.00 per month. The

trial court’s order wrongly placed on Mother the burden to seek enforcement or

modification of the prior order promptly after Father unilaterally reduced his

payments.

 IV. Conclusion

 We reverse the trial court’s order as to the schedule for payment of the arrears

and remand for entry of an order requiring Father to pay any remaining arrears.

Although the timing of the payment of any remaining arrearages owed on remand

falls within the trial court’s discretion, that discretion is not without bounds but

should take into account the fact that one child of the parties is still a minor who may

directly benefit from the support and Father’s ability to pay promptly. As the trial

 - 15 -
 DILLINGHAM V. RAMSEY

 Opinion of the Court

court correctly noted, Father’s voluntary payment of expenses for the adult children

or other expenses not required by the order “must be excluded from” its

“determination of whether to award [Mother] recovery of the child support

underpayment and arrearages,” and this factor should also be excluded from the trial

court’s determination of how and when Father must pay the arrearages. In addition,

the trial court should exclude from its determination any provision which would

punish Mother for any delay in filing her motion to show cause.

 REVERSED IN PART AND REMANDED.

 Judge ARROWOOD concurs.

 Judge TYSON concurs in part and dissents in part.

 - 16 -
 No. COA18-811 – Dillingham v. Ramsey

 TYSON, Judge, concurring in part, dissenting in part.

 Mother failed to properly preserve for appellate review the issues of both the

amount and frequency of arrearage payments. I vote to affirm the trial court’s order

in full. I concur in part and respectfully dissent in part.

 I. Unpreserved Issues

 A. Standard of Review

 A party may not raise for the first time on appeal an issue that was not raised

and argued before the trial court. Wood v. Weldon, 160 N.C. App. 697, 699, 586 S.E.2d

801, 803, cert. denied, 358 N.C. 550, 600 S.E.2d 469 (2004). “In order to preserve an

issue for appellate review, a party must have presented to the trial court a timely

request, objection, or motion, stating the specific grounds for the ruling the party

desired the court to make if the specific grounds were not apparent from the context.”

N.C. R. App. P. 10(a)(1). It has long been the rule that “the law does not permit

parties to swap horses between courts in order to get a better mount in the Supreme

Court.” Weil v. Herring, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934).

 Where an appellant purports to raise an issue on appeal after failing to present

any evidentiary support before the trial court and failing to make any argument

during trial on this issue, the party has failed to preserve the issue for appellate

review. Chafin v. Chafin, __ N.C. App. __, __, 791 S.E.2d 693, 698-99 (2016), disc.

review denied, 369 N.C. 486, 795 S.E.2d 219 (2017). Such issue is waived and

precedent hold this Court will not address it. Id.
 DILLINGHAM V. RAMSEY

 Tyson, J., concurring in part, dissenting in part

 B. Analysis

 Mother’s brief purports to raise issues for the first time on appeal that were

not presented to the trial court. Mother failed to present any evidence related to her

need for a specific periodic arrearage amount. She never addressed nor argued this

issue during the trial. Mother also references income information in her appellate

brief’s statement of facts, which arose in Father’s prior cause of action to modify child

support. This information was not presented or admitted during the hearing on her

motion to show cause. Father’s request for modification was the basis for the parties’

income affidavits. The child support matter was resolved prior to trial on the motion

to show cause, which is the only order Mother appealed and which is at issue in the

present appeal. These income affidavits were not before the trial court and were

included in the supplement to the record on appeal over Father’s objection.

 Mother did not offer into evidence the income affidavits or any other

documentary evidence to support her alleged current income, need for a specific

periodic arrearage payment, or any payment for the minor children’s best interests.

During Mother’s limited testimony, she offered no testimony to show her income, her

assets, her employment, or admitted into evidence anything that could be considered

to assist the trial court with a determination of a specific periodic arrearage payment.

Mother purports on appeal to present documents not presented for consideration by

the trial court in entering the order at issue on appeal, and which are not properly

 2
 DILLINGHAM V. RAMSEY

 Tyson, J., concurring in part, dissenting in part

considered in this appeal via inclusion in the supplement to the record. While Mother

has a different opinion about what terms of arrearage payments would be reasonable,

a difference of opinion does not render the trial court’s unchallenged findings of fact

unreasonable. It is not this Court’s responsibility to assess the merits of factual

issues and arguments not presented to the trial court. N.C. R. App. 10(a)(1). The

amount of past due child support is not challenged by Father. Mother was awarded

the amount she requested and her assertion of additional sums was invited error.

Her challenge to the timing of payment of the apparent past due child support is not

properly before us. Mother’s arguments are properly dismissed.

 II. Payment Schedule of Arrearages

 Father argues the trial court properly found and appropriately ordered

payments of $100.00 per month toward child support arrearages.

 A. Standard of Review

 It is well established and the majority’s opinion acknowledges that the trial

court is vested by both statutes and long standing precedents with broad discretion

to determine the amount and payment of child support. “Child support orders

entered by a trial court are accorded substantial deference by appellate courts and our

review is limited to a determination of whether there was a clear abuse of discretion.”

Leary v. Leary, 152 N.C. App. 438, 441, 567 S.E.2d 834, 837 (2002) (emphasis

supplied) (citing White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)).

 3
 DILLINGHAM V. RAMSEY

 Tyson, J., concurring in part, dissenting in part

“Under this standard of review, the trial court’s ruling will be upset only upon a

showing that it was so arbitrary that it could not have been the result of a reasoned

decision.” Id. (citation and internal quotation marks omitted).

 B. Analysis

 Plaintiff has shown no abuse of discretion in the amount and frequency of

arrearage payments ordered to warrant a reversal of the trial court’s order. As the

trial court found and stated, and as is unchallenged by Mother, the trial court is in

the unique position of observing the demeanor of witnesses, determining their

credibility, and deciding the appropriate weight to lend their testimony.

 “It is well-settled that when acting as the finder of fact, the trial court has the

opportunity to observe the demeanor of the witnesses and determine their credibility,

the weight to be given their testimony and the reasonable inferences to be drawn

therefrom.” Balawejder v. Balawejder, 216 N.C. App. 301, 318, 721 S.E.2d 679, 689

(2011) (citation and quotation marks omitted). The trial court’s findings of fact are

conclusive on appeal even if evidence was presented to support findings to the

contrary. Yurek v. Shaffer, 198 N.C. App. 67, 80, 678 S.E.2d 738, 747 (2009).

 As the trial court stated in finding of fact 21, which is unchallenged by Mother,

“[t]hat the Court took the direct and sworn testimony of the parties and was able to

observe their tenor, tone and demeanor, which the Court took into consideration in

determining the competent and credible evidence.” The trial court further described

 4
 DILLINGHAM V. RAMSEY

 Tyson, J., concurring in part, dissenting in part

the exact evidence it considered in exercising its discretion to determine the amount

of the child support arrearage payments. Appellate judges cannot usurp and

substitute personal preferences to replace a decision so clearly committed to the trial

court’s discretion. See Balawejder, 216 N.C. App. at 318, 721 S.E.2d at 689.

 The trial court’s decision was neither arbitrary nor unsupported by the

evidence. See Yurek, 198 N.C. App. at 80-81, 678 S.E.2d at 747. Findings of fact that

support the order are unchallenged by Mother. The trial court did not abuse its

discretion in determining the manner and method by which the arrearages will be

paid to Mother. The trial court’s order is properly affirmed.

 III. Conclusion

 Mother failed to preserve the two issues she argues on appeal before this Court.

The trial court’s unchallenged findings of fact were supported by the evidence

presented at trial. Nothing in the evidence presented or challenged in the findings

support a conclusion that the trial court abused its discretion by entering payment

and terms of the child support arrearages. White, 312 N.C. at 777, 324 S.E.2d at 833

(the trial court’s ruling “will be upset only upon a showing that it was so arbitrary

that it could not have been the result of a reasoned decision.”).

 Mother has not challenged the trial court’s findings and has not shown the

order “could not have been the result of a reasoned decision.” Id. The trial court’s

order is properly affirmed in its entirety. I concur in part on Mother’s invited error

 5
 DILLINGHAM V. RAMSEY

 Tyson, J., concurring in part, dissenting in part

on the arrearage amount and respectfully dissent in part of any abuse of discretion

being shown to reverse the trial court’s order.

 6